O

# United States District Court
# Central District of California

| | |
|---|---|
| TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST et al., <br><br> Plaintiffs, <br><br> v. <br><br> CALIFORNIA TESTING AND INSPECTIONS, INC., <br><br> Defendant. | Case № 2:24-cv-02588-ODW (SSCx) <br><br> **ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT [27]** |

## I.   INTRODUCTION

Plaintiffs bring this action against Defendant California Testing and Inspections, Inc. ("CTI") for breach of written collective bargaining agreement ("CBA") and violation of the Employee Retirement Income Security Act of 1974, as amended ("ERISA") § 515, 29 U.S.C. § 1145. (First Am. Compl. ("FAC"), ECF No. 9.) CTI failed to appear and defend, and Plaintiffs now move for entry of default judgment against CTI. (Notice Mot. Default J., ECF No. 27.) For the reasons that follow, the Court **GRANTS** Plaintiffs' Motion.[1]

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND

Plaintiffs Trustees of the Operating Engineers Pension Trust, Trustees of the Operating Engineers Health and Welfare Fund, Trustees of the Operating Engineers Vacation-Holiday Savings Trust, Trustees of the Operating Engineers Training Trust, and Trustees of the Operating Engineers Local 12 Defined Contribution Trust (collectively, "Trustees"), are the trustees of five express trusts created pursuant to written declarations of trust ("Trust Agreements") between the International Union of Operating Engineers, Local Union No. 12 ("Local 12"), and various construction multiemployer associations in Southern California and Southern Nevada. (FAC ¶ 5.) These labor-management multiemployer trusts are now, and were at all times material to this action, labor-management multiemployer trusts created and maintained pursuant to the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 186(c)(5). (*Id.*) Additionally, Plaintiffs Engineers Contract Compliance Committee Fund, Southern California Partnership for Jobs Fund, and Operating Engineers Workers' Compensation Trust ("Funds") are funds established by Local 12 and employers for the benefit of their employees. (*Id.*) Trustees and Funds are collectively "Plaintiffs."

On or about October 21, 2020, the Southern California Contractor's Association ("SCCA") notified Local 12 that CTI had assigned bargaining authority to the SCCA for the Master Inspection Field Soil and Material Testing Agreement ("Master Agreement"). (*Id.* ¶ 8.) As of that date, CTI was bound to the terms and provisions of the Master Agreement. (*Id.*) CTI was also bound to the terms of the incorporated Trust Agreements, of which CTI had previously signed written acknowledgments and acceptances. (*Id.* ¶¶ 8–9.)

CTI is an "employer" as defined in the Master Agreement and Trust Agreements, and as defined in ERISA, 29 U.S.C. § 1002(5). (*Id.* ¶¶ 10–11.) As such an employer, CTI is obligated to submit true, complete, and accurate written monthly contribution reports to Plaintiffs ("Monthly Reports"), listing CTI's covered employees, the work and number of hours its covered employees performed, and the amount CTI paid them.

(*Id.* ¶¶ 13–15.A.)  CTI is obligated to pay monthly fringe benefit contributions based on the Monthly Reports.  (*Id.* ¶ 15.B.)

CTI submitted Monthly Reports to Plaintiffs for work performed from November 2023 through March 2024, admitting that it owed Plaintiffs benefit contributions, but failed to timely pay the contributions due.  (*Id.* ¶¶ 16, 18; Mem. ISO Mot. Default J. ("Motion" or "Mot") 1, ECF No. 28.)  In addition, in April 2024, Plaintiffs audited CTI's payroll and related records covering the time period from September 2020 through July 2023 ("Audit Period"), and found that CTI also failed to pay fringe benefit contributions for the Audit Period.  (FAC ¶ 17.)  CTI is thus delinquent on these contributions.  (*Id.* ¶ 19.)

Plaintiffs sent written demands to CTI to recover the unpaid contributions.  (Decl. Diana Nguyen ISO Mot. ("Nguyen Decl.") ¶ 19, ECF No. 32.)  When these efforts failed, on March 29, 2024, Plaintiffs initiated this ERISA action against CTI to collect unpaid contributions due.  (*Id.* ¶¶ 7, 19; Compl., ECF No. 1.)  On April 17, 2024, Plaintiffs served CTI. (Compl. Proof Service, ECF No. 8.)  On May 6, 2024, Plaintiffs amended the complaint and served CTI again, this time by First Class Mail.  (*See* FAC; FAC Proof Service, ECF No. 13; Nguyen Decl. ¶ 11.)  On May 8, 2024, an individual attempted to file an answer in this litigation on CTI's behalf; however, the Court struck the filing because the individual was not authorized to legally represent CTI in this action. (Min. Order Striking Answer, ECF No. 19.)  Although the Court granted CTI an extension to June 21, 2024, to retain legal counsel and respond to Plaintiffs' claims, CTI did not appear and defend. (TOE Ext., ECF No. 20.)  Accordingly, upon Plaintiffs' request, on June 27, 2024, the Clerk of Court entered CTI's default. (CTI Default, ECF No. 25.) On July 29, 2024, Plaintiffs moved for default judgment against CTI to recover unpaid contributions.  (Mot. 1.)

### III.  LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 55(b) authorizes a district court to grant a default judgment after the Clerk enters default under Rule 55(a).  However, before a

court can enter a default judgment against a defendant, the plaintiff must satisfy the procedural requirements in Rules 54(c) and 55, and Central District Civil Local Rules 55-1 and 55-2. Even if these procedural requirements are satisfied, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." *PepsiCo, Inc., v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing *Draper v. Coombs*, 792 F.2d 915, 924–25 (9th Cir. 1986)). Instead, "[t]he district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (collecting cases).

Generally, after the Clerk enters a default, the defendant's liability is conclusively established, and the well-pleaded factual allegations in the plaintiff's complaint "will be taken as true" except those pertaining to the amount of damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (per curiam) (quoting *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)). The court need not make detailed findings of fact in the event of default, except as to damages. *See Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1414 (9th Cir. 1990).

## IV. DISCUSSION

Plaintiffs satisfy the procedural requirements for default judgment, establish that entry of default judgment against CTI is substantively appropriate, and demonstrate that the requested relief is warranted.

### A. PROCEDURAL REQUIREMENTS

Local Rule 55-1 requires that the movant establish: (1) when and against which party default was entered; (2) the pleading to which default was entered; (3) whether the defaulting party is a minor or incompetent person; (4) that the Servicemembers Civil Relief Act does not apply; and (5) that the defaulting party was properly served with notice, if required under Rule 55(b)(2). In turn, Rule 55(b)(2) requires written notice on the defaulting party if that party "has appeared personally or by a representative."

Plaintiffs meet these requirements. On June 27, 2024, the Clerk entered default against CTI as to Plaintiffs' First Amended Complaint. (*See* CTI Default.) Counsel for

Plaintiffs submits declaration testimony that CTI is not an infant or incompetent person and that the Servicemembers Civil Relief Act does not apply. (Nguyen Decl. ¶ 17.) Finally, although CTI has not formally or legally appeared in this action, Plaintiffs served CTI with a copy of the request for entry of default and this Motion. (*Id.* ¶ 15; Mot. Proof Service, ECF No. 27-2.) Thus, Plaintiffs satisfy the procedural requirements.

**B.  *EITEL* FACTORS**

In considering whether entry of default judgment is warranted, courts consider the "*Eitel* factors": (1) the possibility of prejudice to plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake; (5) the possibility of a material factual dispute; (6) whether the default was due to excusable neglect, and (7) the strong policy favoring decisions on the merits. *See Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). "Of all the *Eitel* factors, courts often consider the second and third factors to be the most important." *Viet. Reform Party v. Viet Tan-Viet. Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019) (internal quotation marks omitted). Thus, the Court considers these factors first.

*1.  Second & Third Eitel Factors*

The second and third *Eitel* factors require a plaintiff to "state a claim on which the [plaintiff] may recover." *PepsiCo*, 238 F. Supp. 2d at 1175 (alteration in original). Although well-pleaded allegations are taken as true, "claims which are legally insufficient[] are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

Plaintiffs raise one claim for breach of the Master Agreement in violation of 29 U.S.C. § 1145. (FAC ¶¶ 12–28.) Under ERISA, "[e]very employer who is obligated to make contributions to a multiemployer plan . . . shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145; *see also Winterrowd v. David Freedman & Co.*, 724 F.2d 823, 826 (9th Cir. 1984) (holding that employer's failure to contribute agreed-upon amount to pension

fund covering agricultural workers was an ERISA violation).  If the employer fails to make contributions as required, the plan or a plan fiduciary may bring an action to recover the unpaid contributions.  *See* 29 U.S.C. § 1132(d)(1); *see, e.g.*, *Bd. of Trs. of Bay Area Roofers Health & Welfare Tr. Fund v. Westech Roofing*, 42 F. Supp. 3d 1220, 1227 (N.D. Cal. 2014).

Plaintiffs allege that, pursuant to the Master Agreement, incorporated Trust Agreements, and ERISA, CTI is obligated to make contributions to a multiemployer plan, and submit true, complete, and accurate written monthly contribution reports. (FAC ¶¶ 15–21.)  Plaintiffs further allege that CTI failed to pay fringe benefit contributions owed for the months of November 2023 through March 2024 and the Audit Period.  (*Id.* ¶¶ 16–17, 21.)  CTI is an employer obligated under the terms of the Master Agreement and incorporated Trust Agreements to make contributions to the Trust Funds.  Thus, CTI's failure to make such contributions violates 29 U.S.C. § 1145. Thus, Plaintiffs sufficiently plead a meritorious claim for breach of the Master Agreement and to recover delinquent contributions under ERISA, and therefore the second and third *Eitel* factors favor entry of default judgment.

*2.     Remaining Eitel Factors*

On balance, the remaining *Eitel* factors also weigh in favor of entering default judgment against CTI.  To begin, the first and fourth *Eitel* factors—possibility of prejudice and sum of money at stake—favor default judgment.  *See Eitel*, 782 F.2d at 1471–72.  Plaintiffs would suffer prejudice absent entry of default judgment because they would have no recourse against CTI's failure to pay contributions due according to CTI's own Monthly Reports.  Further, as discussed below, the sum of money Plaintiffs seek is directly proportionate to the amount CTI owes and failed to pay.

The fifth and sixth factors—possibility of dispute and excusable neglect—also weigh in favor of entering default judgment.  *See id.*  Plaintiffs' allegations are accepted as true on default, and CTI may not now "challenge the accuracy of the allegations in the complaint."  *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 922

(C.D. Cal. 2010). Plaintiffs support their claims with evidence that demonstrates CTI owes Plaintiffs certain unpaid contributions, and the Court's review of the record reveals "no factual disputes . . . that preclude the entry of default judgment." *Id.* Further, in May 2024, an individual purporting to be CTI's president attempted to file an answer on CTI's behalf, indicating CTI's knowledge of this litigation. (Nguyen Decl. ¶ 10.) However, as the individual was not an attorney and not authorized to legally represent CTI, the Court struck the answer. (Min. Order Striking Answer.) The Court then extended CTI's deadline to answer or respond to Plaintiffs' claims to June 21, 2024. (TOE Ext.) Nevertheless, CTI did not appear in this case in the intervening five months. Accordingly, nothing in the record suggests CTI's failure to appear is a result of excusable neglect.

Finally, the seventh factor—policy favoring decisions on the merits—always weighs in a defaulting defendant's favor. *See Eitel*, 782 F.2d at 1471–72. However, because CTI's failure to appear in this action prevents the Court from reaching a decision on the merits, this factor does not prevent the Court from entering judgment by default. *See Duralar Techs. LLC v. Plasma Coating Techs., Inc.*, 848 F. App'x 252, 255 (9th Cir. 2021) (affirming entry of default judgment where all factors except the seventh weighed in the plaintiff's favor).

In sum, the *Eitel* factors weigh in favor of entering default judgment against CTI on Trustees' claim for breach of the Master Agreement and violation of ERISA.

C. **REQUESTED RELIEF**

Once liability is established through a defendant's default, a plaintiff must establish that the requested relief is appropriate. *Geddes*, 559 F.2d at 560.

In an ERISA action to recover delinquent contributions, a successful plaintiff is entitled to the following forms of relief:

(A) the **unpaid contributions**,
(B) **interest** on the unpaid contributions,
(C) an amount equal to the greater of--
    (i) interest on the unpaid contributions, or

    (ii) **liquidated damages** provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

(D) reasonable **attorney's fees and costs** of the action, to be paid by the defendant, and

(E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2) (emphasis added). The Ninth Circuit has held that **audit costs** are also recoverable. *Operating Eng'rs Pension Tr. v. A-C Co.*, 859 F.2d 1336, 1343 (9th Cir. 1988) (citing 29 U.S.C. § 1132(g)(2)(E)). Plaintiffs cannot rely solely on allegations to establish damages, for "even a defaulting party is entitled to have its opponent produce some evidence to support an award of damages." *LG Elecs., Inc. v. Advance Creative Comput. Corp.*, 212 F. Supp. 2d 1171, 1178 (N.D. Cal. 2002).

  Here, Plaintiffs seek unpaid contributions, prejudgment interest, liquidated damages, audit costs, and attorneys' fees and costs. (Mot. 20.)[2]

  *1. Unpaid Contributions*

  Generally a plaintiff may not seek to recover more on default judgment than pleaded in the complaint. *See* Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."). However, "[c]ourts in the Ninth Circuit have made a limited exception to this requirement for delinquent contributions that come due *after* a complaint is filed on the basis that such an approach is consistent with the legislative intent underlying ERISA." *Bay Area Painters v. Alta Specialty*, No. C06-06996 MJJ, 2008 WL 114931, at *4 (N.D. Cal. Jan. 10, 2008).

  Here, Plaintiffs seek a higher sum of unpaid contributions in the Motion than pleaded in the First Amended Complaint. (*Compare* FAC ¶ 16 (seeking $160,957.70 unpaid contributions for November 2023 through March 2024), *with* Mot. 1 (seeking $236,546.48 unpaid contributions for November 2023 through May 2024).) Under the

---

[2] They also seek post-judgment interest as provided by law from the date of entry of judgment. (Mot. 20.)

noted exception, Plaintiffs are permitted to seek recovery of unpaid contributions that became delinquent after filing this action in March 2024, and the increase here reflects only those additional delinquent contributions. (*See* Decl. Bernardo Ramos ISO Mot. ("Ramos Decl.") Ex. I ("Unpaid Contribution Summary"), ECF Nos. 29, 29-9.) Therefore, the relief Plaintiffs seek on default judgment does not differ in kind, and permissibly exceeds, that expressly identified in the First Amended Complaint.

Plaintiffs seek unpaid fringe benefit contributions of $236,546.48 for work performed during the months of November 2023 through May 2024, based on CTI's written Monthly Reports. (Mot. 1; Ramos Decl. ¶ 16, Exs. G–H ("Monthly Reports & Summary"), ECF Nos. 29-7 to 29-8; Unpaid Contribution Summary.) Additionally, Plaintiffs seek $7,655.71 based on CTI's unreported hours, worked or paid, during the Audit Period, as documented in the Audit Report. (Mot. 2; Ramos Decl. ¶¶ 17–18; Decl. Denon Rushing ISO Mot. ("Rushing Decl.") ¶¶ 4–7, Ex. A ("Audit Report"), ECF Nos. 30, 30-1.) Plaintiffs adequately support these amounts with CTI's Monthly Reports and the Audit Report. *See Bay Area Painters*, 2008 WL 114931, at *4 (relying on monthly contribution reports created by defendants to calculate contributions owed); *Cent. Cal. IBEW/NECA Pension Tr. v. Ozzimo Elec., Inc.*, No. C 13-03800 JSW, 2015 WL 1883906, at *3 (N.D. Cal. Apr. 22, 2015) (finding audit results sufficient to establish the amount of unpaid contributions, interest, and liquidated damages).

Accordingly, the Court finds that Plaintiffs adequately support their request for unpaid benefit contributions, in the total amount of **$244,202.19**.[3]

*2.     Liquidated Damages, Prejudgment Interest, and Audit Fees*

Plaintiffs also seek liquidated damages, prejudgment interest, and audit costs. (FAC ¶¶ 23–26; Mot. 20.)

ERISA requires an award of liquidated damages on delinquent unpaid or late-paid contributions at the rate provided for in the CBA, but not in an amount greater than 20% of the contributions. 29 U.S.C. § 1132(g)(2)(C); *Operating Eng'rs Pension*

---

[3] $236,546.48 (Monthly Reports) + $7,655.71 (Audit Report) = $244,202.19.

*Tr. v. Beck Eng'g & Surveying Co.*, 746 F.2d 557, 569 (9th Cir. 1984). The Master Agreement and associated policy for collection provide that liquidated damages here are calculated at 10% of the unpaid and late paid, "delinquent" contributions. (Ramos Decl. ¶ 23, Exs. C–D ("Master Agreement") § XIX.B, ECF Nos. 29-3 to 29-4.) Although the total of unpaid contributions is $244,202.19, CTI also became delinquent on an additional $13,243.10, which it paid late in January 2024. (Ramos Decl. ¶ 16; Unpaid Contribution Summary; Monthly Reports & Summary.) Thus, CTI's total delinquency is $257,445.29.[4] Ten percent of this total delinquency results in liquidated damages of **$25,744.53**. (Ramos Decl. ¶ 23.)

ERISA also requires an award of prejudgment interest, "determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of title 26." 29 U.S.C. § 1132(g)(2). Here, the Master Agreement's incorporated Trust Agreements authorize Plaintiffs to adopt rules and procedures governing delinquent contributions. (Ramos Decl. ¶ 11, Ex. A ("Trust Agreements") V § 5(o), ECF No. 29-1.) Plaintiffs adopted a collection policy that requires delinquent employers to pay simple interest assessed at 8% per annum. (*Id.* Ex. F ("Collection Policy") § 2, ECF No. 29-6.) Assessing 8% per annum against the delinquency results in prejudgment interest of **$10,876.81**. (*See* Ramos ¶ 22; Unpaid Contribution Summary.)

Finally, ERISA authorizes an award of audit costs. *A-C Co.*, 859 F.2d at 1343. Plaintiffs seek $600.00 in audit costs, which they support with their auditor's declaration. (Rushing Decl. ¶ 8.) Thus, Plaintiffs are entitled to recover **$600.00** in audit costs.

### 3. Attorneys' Fees & Costs

Plaintiffs also seek their reasonable attorneys' fees, litigation expenses, and costs, and expressly seek a fee award in excess of the fee schedule provided in the Local Rules of this District. (Mot. 8–14.)

---

[4] This sum comprises $236,546.48 unpaid contributions and $13,243.10 late-paid contributions for the months of November 2023 through May 2024, plus $7,655.71 unpaid contributions for the Audit Period: $236,546.48 + $13,243.10 + $7,655.71 = $257,445.29 total delinquency.

A plaintiff trust fund that prevails in an action to collect unpaid benefit contributions is entitled to recover its reasonable attorneys' fees and costs. 29 U.S.C. § 1132(g)(2); *Operating Eng'rs Pension Tr. v. Reed*, 726 F.2d 513, 514 (9th Cir. 1984). In this District, attorneys' fees awarded on default judgment are calculated according to the fee schedule provided in Local Rule 55-3. C.D. Cal. L.R. 55-3. However, "[a]n attorney claiming a fee in excess of this schedule may file a written request at the time of entry of the default judgment" and the Court "shall hear the request and render judgment for such fee as the Court may deem reasonable." *Id*.

To determine reasonable fees under ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1), courts use a "hybrid lodestar / multiplier" approach. *McElwaine v. US W., Inc.*, 176 F.3d 1167, 1173 (9th Cir. 1999). To calculate the lodestar, a court multiplies "the number of hours an attorney reasonably expended on the prevailing party's case" with the attorney's "reasonable hourly rate, based on evidence of the market rate for the services provided." *Edmo v. Corizon, Inc.*, 97 F.4th 1165, 1168 (9th Cir. 2024). Once the lodestar figure is determined, the court then decides whether to adjust the figure based on a variety of factors.[5] *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3 (1983)). The lodestar figure is presumptively reasonable, and it should therefore be adjusted only in "rare" and "exceptional" cases. *Edmo*, 97 F.4th at 1168 (collecting cases). The fee applicant bears the "burden of showing that the claimed rate and number of hours are reasonable." *Blum v. Stenson*, 465 U.S. 886, 897 (1984).

---

[5] These factors include

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Edmo*, 97 F.4th at 1168 (quoting *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)).

Plaintiffs seek $18,600.50 in attorneys' fees, based on hourly rates between $265.00 and $430.00 for attorneys, and $120.00 for paralegals, with a total of 72 hours expended during the lifetime of this litigation. (Mot. 10–11; Nguyen Decl. ¶¶ 3–4, Ex. A ("Billing Report"), ECF No. 32-1.) To support that these hourly rates are reasonable, Plaintiffs offer relevant case authority and declaration testimony. (Mot. 10–11; Nguyen Decl. ¶¶ 1–4; Decl. Igal Khoshlesan ISO Mot. ("Khoshlesan Decl.") ¶¶ 3–5, ECF No. 31.) To substantiate that the hours were reasonably expended, they submit declaration testimony and billing records. (Nguyen Decl. ¶¶ 1–4; Billing Report.) After careful review, the Court finds Plaintiffs adequately support the reasonableness of the rates and hours requested. *See Hensley*, 461 U.S. at 433 (noting that fee applicants should "submit evidence supporting the hours worked and rates claimed"); *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986) (requiring detailed time records justifying the hours expended). Plaintiffs do not request a multiplier, and the Court finds one is not warranted in this case. (*See* Mot. 11; Nguyen Decl. ¶ 5.) Accordingly, the Court awards Plaintiffs **$18,600.50** in attorneys' fees.

Plaintiffs also seek $9.05 in litigation expenses and $487.40 in filing and service costs. (Mot. 14, 20.) They support these requests with declaration testimony from counsel with a breakdown of these costs. (Nguyen Decl. ¶¶ 4, 6, Ex. B ("Costs Listing Report"), ECF No. 32-2.) As the costs are recoverable and supported by evidence, the Court awards Plaintiffs **$9.05** in litigation expenses and **$487.40** in costs.

4. *Summary of Relief*

In summary, the Court finds that Plaintiffs are entitled to recover $244,202.19 in unpaid contributions, $25,744.53 in liquidated damages, $10,876.81 in prejudgment interest, $600.00 in audit costs, $18,600.50 in attorneys' fees, $9.05 in litigation expenses, and $487.40 in costs. Plaintiffs are therefore entitled to recover the total sum of **$300,520.48**.

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Plaintiffs' Motion for Entry of Default Judgment against CTI for breach of written CBA and violation of ERISA. (ECF No. 27.)  The Court **AWARDS** Plaintiffs the total sum of **$300,520.48** in principal, attorneys' fees, and costs.  The Court will issue judgment in accordance with this order.

**IT IS SO ORDERED.**

November 13, 2024

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**